Filed 1/29/21  In re J.H. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re J.H., a Person Coming Under the Juvenile Court Law. | C091241 |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.H.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JDSQ17426, JDSQ17566, JDSQ18112, JDSQ18257) |

Following his adjudication on multiple juvenile wardship petitions, the minor, J.H., was adjudged a ward of the Yolo County Juvenile Court and committed to the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ). Following his direct appeal, this court modified the judgment to accurately reflect the minor's predisposition credits but otherwise affirmed the judgment.  The minor subsequently filed a motion to recall the DJJ commitment in the juvenile court, which the

1

court denied.  On appeal, the minor contends the juvenile court erred in denying his motion to recall the DJJ commitment order.  We disagree and shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The minor's underlying four juvenile court cases, which resulted in his DJJ commitment, were the subject of an appeal in case No. C088098.[1]  In the unpublished decision of January 10, 2020, we modified the predisposition custody credits but otherwise affirmed the judgment.  (*In re J.H.* (Jan. 10, 2020, C088098) (*J.H. I*).)  While that appeal was pending, on August 30, 2019, the minor filed a motion to recall the DJJ commitment with the juvenile court pursuant to Welfare and Institutions Code section 779.[2]  In the motion, the minor argued that the commitment order must be set aside because he was not being provided with reformatory treatment and the commitment was not of probable benefit to him.

At the hearing on the minor's motion to recall his DJJ commitment, Anna Natividad-Pham, a supervising casework specialist of the intake units at DJJ, testified that she oversees the youthful offenders committed to DJJ and supervises three casework specialists who prepare clinical summaries and case plans.  During the intake process, staff evaluate the minor who has been committed to DJJ and develop an initial case plan.  During this process, medical, mental health, and educational professionals perform testing on the minor, and a casework specialist will use the information from the assessment team to develop the case plan.  DJJ also utilizes the California Youth Assessment and Screening Instrument (YASI), which is an evidence-based tool that helps determine the youth's treatment needs, risk of re-offense, and strengths to determine which programs would be beneficial to the minor.  The YASI can be administered

---

[1] The full record on appeal in case No. C088098 was made a part of the record in this appeal.

[2] Further undesignated statutory references are to the Welfare and Institutions Code.

2

whenever a minor exhibits a behavioral change. Casework specialists are required to administer the YASI three to four times a year in order to determine whether the minor's behavior has changed and whether treatment must be adjusted accordingly.

Parole agent Alexander Guintu supervises youth correctional counselors and a caseload of youthful offenders at the DJJ facility called N.A. Chaderjian Correctional Facility (Chaderjian). Guintu is responsible for ensuring that youth correctional counselors implement the minor's case plan and recommend modifications where necessary. Part of that responsibility includes attending the case conferences—which should be held at least every 120 days—with the minor and members of the treatment team to discuss the minor's progress.

Guintu supervised the minor while he was housed at Chaderjian.[3] Guintu met with the minor during case conferences and checked in with him regularly. But Guintu and the minor only had one-on-one meetings when the minor wanted to talk about something in particular. A youth correctional counselor also supervised the minor.

The minor's initial evaluation highlighted concerns about gang involvement, aggression, violence, and below average cognitive functioning. Guintu was aware of the minor's aggression and testified that he had a number of "write-ups" for physical altercations while he was on Guintu's caseload. At the minor's case conference on May 28, 2019, the team members discussed his behavior at DJJ, including his responsiveness to redirection. Although Guintu was aware of the minor's special education needs, he could not recall whether the team discussed those needs at the case conference.

The minor's initial report also noted a number of adverse childhood experiences. DJJ did not provide formal group therapy for grief, but the minor could have received

---

[3] In July 2019, the minor was transferred to the Ventura Youth Correctional Facility (Ventura). The minor subsequently returned to Chaderjian in August 2019.

individualized counseling from his youth correctional officer, or the psychologist assigned to his living unit. Youth correctional counselors can request a mental health referral when they feel a minor needs such services. The minor participated in the four-month "CounterPoint" program, an intervention group that identifies and addresses negative beliefs, and "Introduction to Treatment," a primer on the treatment programs at DJJ. He also completed a journaling program called "Interactive Journal of What Got Me Here," a program called "Skill of the Week," a weekly unit-wide program that addresses social skills, and "Advance Practice," which addresses social skills in a small setting.

The minor's most recent "attitude" score on the YASI indicated a high-risk level and a low-strength level. After the minor completed CounterPoint, he was referred to aggression interruption training, but Guintu was unaware whether the minor enrolled in or completed it. In order to promote positive peer interactions, the minor's case plan directed him to participate in "social networks," which are weekly one-on-one sessions with his youth correctional counselor that address negative peer associations and their impact on his life. The minor's initial treatment plan also recommended substance abuse treatment, but Guintu did not recall whether the minor participated in such treatment while the minor was on his caseload. When Guintu recommended the minor be transferred to Ventura, he expressed concern that the minor was using drugs while at Chaderjian. Guintu concluded that the minor had engaged in negative behavior and would benefit from a new environment. The minor was ultimately transferred back to Chaderjian because of safety concerns about violence and the minor engaging in risky behavior while he was at Ventura.

Where a minor has been involved in a "serious incident" at DJJ, the minor would be placed on a "limited program" due to investigation or safety concerns. The particular limitations of any given limited program would be predicated on the nature of the underlying incident and would therefore vary from matter to matter. Placement on a

limited program might include receiving counseling from an assigned clinical psychologist at the minor's cell door due to the fact that the minor was not allowed to come out of his cell to receive treatment. At various points during his time at DJJ, the minor was on a limited program.

Tiffany Hollis, a parole agent at Chaderjian, began supervising the minor around August 24, 2019, when he returned from Ventura. While at Ventura, the minor participated in "Aggression Replacement Training." However, the minor was returned to Chaderjian due to safety concerns and the minor engaging in risky behavior while at Ventura, which were interfering with his ability to participate in programs there. After the minor returned to Chaderjian, he was referred to "Individual Change Plan," an interactive journaling program in which his youth correctional counselor participated. The minor had also participated in the "Current Domain Group," which meets Monday through Friday.

The minor testified that his average day at Chaderjian consisted of breakfast followed by school. After school, the youth are allowed to interact with other youth before dinner. According to the minor, he has requested placement in a GED program to facilitate his graduation. While not in a GED program, the minor did obtain educational credits toward a diploma. The minor testified that he has not received any special education services or individual counseling while at DJJ. In the minor's opinion, some of his behavioral problems stemmed from boredom. The minor believes he is most in need of anger management and self-expression. His initial focus at DJJ was on returning home, but he felt it had "just gotten worse."

After the conclusion of the testimony at the hearing on the minor's motion to recall his DJJ commitment, the court denied the motion. In support of its ruling, the court noted that the minor had received an individualized education program (IEP), redirection counseling, gang intervention, training aimed at the development of prosocial activities, and consistent interaction with DJJ staff. Nonetheless, he continued to associate with

5

negative peers and violated the rules several times. According to the court, the minor's gang involvement complicated his rehabilitation. Despite "the wrinkles going on at DJJ, it is still [the minor's] best path."

The minor filed a timely notice of appeal.

## DISCUSSION

The minor contends the juvenile court abused its discretion in denying his motion to recall his DJJ commitment pursuant to section 779. He contends that the court erred in denying his motion due to DJJ's failure to adequately treat the minor, as evidenced by the "counter-productive progress made in [the minor's] case, and of all of the services not provided to [the minor] during his tenure in DJJ." We disagree.

Section 779 provides, "The court committing a ward to the [DJJ] may thereafter change, modify, or set aside the order of commitment. . . . This section does not limit the authority of the court to change, modify, or set aside an order of commitment after a noticed hearing and upon a showing of good cause that the [DJJ] is unable to, or failing to, provide treatment consistent with Section 734." (§ 779.) Section 734 provides, "No ward of the juvenile court shall be committed to the [DJJ] unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the [DJJ]." (§ 734.) Thus, under section 779, a juvenile court may modify or set aside a DJJ commitment order. (§ 779.) A minor does not show error on appeal simply by asserting that the juvenile court could have ordered a less restrictive placement. Rather, the minor must show that the court abused its discretion in its decision. (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395.)

As summarized in our prior opinion upholding the juvenile court's original commitment of the minor to DJJ: "The record shows the juvenile court considered less restrictive placements and found them ineffective or inappropriate. . . . [Citation.] When he was placed at home or in a highly structured group home, the minor continued to

6

endanger himself and the community by committing felonies, some of which were violent. The minor failed his group home placement within two weeks, and the group home would not take him back. One of the two suggested placements from minor's counsel had insufficient structure, while the other was not a locked facility. In light of the minor's demonstrated need for structure and his history of criminal behavior and absconding, it was not an abuse of discretion for the juvenile court to conclude that neither alternative was effective or appropriate." (*J.H. I, supra*, C088098, [p. 8].)

As the juvenile court noted in ruling on the minor's section 779 motion, the minor has demonstrated very little change in circumstances since the original commitment order. While the minor may not be receiving as many services as he would like, he did complete the four-month CounterPoint program, a journaling program, and a social skills program in a small setting. The court found the minor had also received redirection counseling, an IEP, and assistance with coping strategies. Additionally, he made progress in obtaining educational credits toward earning a diploma. He also had setbacks while at DJJ stemming from his aggression and gang involvement. As the juvenile court observed, the minor's "constant going back and forth to violence is really preventing him" from fully availing himself of the programs DJJ offers.

The minor's argument that it is not probable he will benefit from his placement at DJJ takes too narrow a view of the juvenile court's reasons for his commitment and is not supported by the record. It was the minor's repeated failure in less restrictive placements that led to his DJJ commitment. (*J.H. I, supra*, C088098, [p. 8].) The probation department noted many areas where DJJ would benefit the minor, as did the juvenile court in its original commitment there. (*J.H. I*, [pp. 5-6].) The minor has been participating in several programs which address many of these needs and has shown mixed results, but as the juvenile court observed, the minor "recognizes that his own actions have prevented him from doing things" but DJJ was "still his best path." The minor contends he did not receive adequate counseling and therapy by a mental health

7

professional at DJJ. The record does not support his contention. Guintu testified that the minor could have received individualized counseling from his youth correctional officer or the psychologist assigned to his living unit. Youth correctional counselors can request a mental health referral when they feel a minor needs such services. It is unclear from the record whether such services were requested or obtained, but it is clear that DJJ offers these services as well as other therapeutic programs, which the minor did participate in. Nothing in the record would support a finding of a change of circumstances such that the minor would no longer benefit from the programs available at DJJ. The minor has failed to make a showing that the court abused its discretion in its decision. (*In re Michael D., supra*, 188 Cal.App.3d at p. 1395.) Accordingly, we reject his contention that the court erred in denying his section 779 motion.

## DISPOSITION

The order of the juvenile court denying the minor's motion pursuant to section 779 is affirmed.

 

 

<u>          /s/          </u>
RAYE, P. J.

 

We concur:

 

<u>          /s/          </u>
RENNER, J.

 

<u>          /s/          </u>
KRAUSE, J.

8